CIACCIO, Judge.

Writ Denied

Issue # 1, Search and Seizure
The defendant argues that the inventory search of his vehicle violated his constitu *1089 tional protection against warrantless searches.
In this case the Florida policeman testified that he saw the defendant’s vehicle backed up to a convenience store at night and there were two occupants merely sitting in the vehicle. The officer was suspicious because the occupants did not leave the vehicle and it was parked near a restroom where there had been sex and molestation crimes committed. The officer approached the occupants for questioning and also ran a computer check of the vehicle. The computer check revealed that the car was stolen. Thereafter, the defendant was arrested. The car was from out of state and the officer testified that it was routine procedure to impound and inventory such vehicles.
Under State v. Sims, 426 So.2d 148 (La.1983) the police may take a vehicle into custody in order to protect and preserve the property contained therein. In South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the United States Supreme Court upheld a routine non-criminal caretaker inventory of a vehicle lawfully impounded for vehicular violations. In this case the arresting officer testified to the effect that this inventory search was a routine procedure of his department for out of state vehicles.
However, even if one takes the position that the search was conducted in order to secure evidence of the theft, such a search would be legal. That is, an inventory search of a vehicle, even after impoundment, has been upheld as legal when there exists a belief that the vehicle contains contraband at the time it is stopped. See: Michigan v. Thomas, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750. It would be reasonable to conclude that since the ve-hide was stolen that it contained fruits of the crime at the time it was stopped.
For these reasons we conclude that this assignment lacks merit.

Issue #2, Identification

The defendant contends that the photographic identification process was illegally suggestive and therefore the identification evidence should be suppressed.
Of the four identification witnesses, three (i.e., two victims and a policeman) testified that there were no suggestions made to them at the time of the presentation of photographs. The remaining victim, Mr. Bryson, testified that he narrowed the pictures down to two. At that time he was advised by the interviewing policeman that one of those two photos depicted the robber. Mr. Bryson was asked if this statement had influenced his decision and he replied that it had not. He also stated that he did not feel that he had to identify somebody but rather that if the pictures did not depict the robber he would not have picked anyone (Tr 6-7).
For these reasons the identification process was not unduly suggestive.

Issue #3 Severance

This issue has been disposed of on appeal.
For these reasons this writ application is denied as there exists no error in the ruling of the trial court.