# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,                )
                                  )
                                  )    I.D. No. 1902013833
v.                                )    In and for Kent County
                                  )
MICHAEL K. PALMER,                )
                                  )
        Defendant.                )

## ORDER

Submitted: September 19, 2019
Decided: September 30, 2019

### *Upon Defendant's Motion to Suppress*
### DENIED

Upon consideration of Defendant Michael Palmer's (hereinafter "Defendant") Motion to Suppress of and the State's response, as well as the evidence and closing arguments presented at the hearing held on September 19, 2019, the Court finds that the police had probable cause to seize Defendant and search the Vehicle and the Package, and therefore the motion to suppress is **DENIED**.

## I. Factual Background

In January 2019, a confidential informant relayed information to Detective Joshua Boesenberg of the Dover Police Department that Defendant was sending mail laced with controlled substances to a Delaware Department of Correction facility from 16 Evergreen Circle, Dover, Delaware (hereinafter "the Residence"). The confidential informant also informed Detective Boesenberg that Defendant was in possession of firearms and that he lived at the Residence with an individual named Jasmine Street. The police later confirmed that the Residence was owned or leased by an individual named Michael Street.

In February 2019, Homeland Security Investigations (hereinafter "HSI") Special Agent Sean Downey informed the Dover Police Department as well as U.S. Postal Service officials in Dover that Customs and Border Patrol had intercepted a U.S. Postal Service package (hereinafter the "Package"), addressed to the Residence, that contained illicit narcotics. Law enforcement authorities arranged for the Package to be delivered to the post office located at 55 Loockerman Plaza, Dover, Delaware (hereinafter the "Post Office"), where it would be provided to the recipient.

On February 21, 2019, an individual later identified as Sheldon Claud entered the Post Office and inquired about the Package. A postal worker instructed Mr. Claud to call a general information phone number to inquire further about the Package. A call was made on the evening of February 21 to the phone number that had been provided to Mr. Claud. On February 22, 2019, a postal service agent contacted the number from which the inquiry had been made on the evening of February 21 and left information that the Package had been located and could be picked up at the Post Office on February 22.

On February 22, Detective Matthew Krough of the Dover Police Department observed Defendant leave the Residence in a silver Dodge Caravan (hereinafter the "Vehicle"). Later that day, Detective Boesenberg and Special Agent Downey, who were seated in a vehicle outside the Post Office, observed the Vehicle enter the vicinity of the Post Office and park nearby. Defendant was in the driver's seat, and an individual later identified as Mr. Claud was in the passenger's seat. Defendant then drove the Vehicle to the other side of the Post Office. Detective Boesenberg and Special Agent Downey, along with Master Corporal Jordan Miller of the Dover

2

Police Department, who was stationed on the other side of the Post Office, believed that Defendant and his passenger were engaging in counter-surveillance: Defendant and Mr. Claud drove slowly around the Post Office, remained inside the Vehicle, and eventually left the area.

Master Corporal Miller followed the Vehicle and observed Defendant park in front of 30 South New Street, Dover, Delaware. Mr. Claud exited the Vehicle, entered the building, and soon returned with another unknown individual later identified as Stanley Stanford. After Mr. Claud and Mr. Stanford entered the Vehicle, Defendant drove back to the Post Office and parked nearby. All three men exited the Vehicle but walked separately as they entered the Post Office. A Postal Service agent inside the Post Office texted Special Agent Downey, informing him that someone had signed for the Package and was now carrying it out of the building. Master Corporal Miller observed Mr. Stanford carrying the Package, accompanied by Defendant and Mr. Claud. Defendant, Mr. Stanford, and Mr. Claud were taken into custody after they returned to the Vehicle. Master Corporal Miller conducted a pat down search of Defendant and recovered $6,904.00 in cash.

The Vehicle was impounded and searched. Law enforcement found the Package inside the Vehicle with the narcotics previously discovered by Customs and Border Patrol. Law enforcement also recovered other illegal drugs, a firearm, other contraband, and mail addressed to a Department of Correction facility laced with narcotics.

## II. Discussion

Defendant argues that the police did not have probable cause to arrest him, and

3

therefore that any evidence obtained as fruit of the arrest should be suppressed because it was obtained in violation of his Constitutional rights. Defendant also separately challenges the search of the Vehicle and the search of the Package, arguing that a search warrant or warrants should have been obtained before searching the Vehicle and the Package.

The State responds that law enforcement had probable cause to search the Vehicle and the Package because they had reason to believe that both contained contraband. According to the State, law enforcement knew that a package containing illegal narcotics was placed inside the Vehicle, and Delaware law allows the police to search containers within a vehicle for contraband that could be found in those containers. Therefore, the State asserts that Defendant's motion to suppress should be denied.

## A. The Police Had Probable Cause to Seize Defendant.

A police officer may make a warrantless arrest for a felony offense when the arresting officer has "reasonable ground to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."[1] The phrase "reasonable ground to believe" means probable cause, which is established by a totality of the circumstances.[2]

The requirements for probable cause to arrest an individual without a warrant

---

[1] *Hovington v. State*, 616 A.2d 829, 834 (Del. 1992) (quoting 11 *Del. C.* § 1904(b)).

[2] *Id.* at 833 (citing *Illinois v. Gates*, 462 U.S. 213 (1983)).

are "at least equal to those where an arrest warrant is obtained."[3] Probable cause may be established from either direct observation or hearsay.[4] Hearsay is an acceptable basis for probable cause provided that the information is corroborated by other facts.[5]

Here, the facts and circumstances were sufficient to establish probable cause for the police to arrest Defendant without a warrant. First, a confidential informant told the Dover Police that Defendant was sending mail laced with drugs from the Residence to a Department of Correction facility, and that Defendant lived at the Residence with an individual named Jasmine Street. Second, law enforcement confirmed that the owner or lessee of the Residence was an individual named Michael Street. Third, HSI informed local law enforcement and postal authorities that it had intercepted the Package, which was addressed to the Residence and contained narcotics. Fourth, an individual inquired about the Package at the Post Office and was given a general information number to inquire further about the Package; information was left with an inquirer to report to the Post Office on February 22 to retrieve the Package; and Defendant left the Residence and subsequently made two trips to the Post Office on February 22, ultimately retrieving the Package with two other men. Fifth, on the day of Defendant's seizure, a surveillance team saw Defendant perform "counter-surveillance" tactics outside the Post Office. Sixth,

---

[3] *Thompson v. State*, 539 A.2d 1052, 1055-56 (Del. 1988) (citing *Wong Sun v. U.S.*, 371 U.S. 471, 479 (1963)).

[4] *O'Neil v. State*, 691 A.2d 50, 54 (Del. 1997) (quoting *Garner v. State*, 314 A.2d 908, 911 (Del. 1973)).

[5] *Id.* (quoting *Garner*, 314 A.2d at 911).

when Defendant entered the Post Office along with the two other men, they walked separately from each other, a suspicious approach to a routine errand. Seventh, the Package was addressed to the Residence, but Mr. Stanford was carrying the Package when the three men left the Post Office, despite the fact that Defendant went into the Post Office along with Mr. Stanford.

Even assuming that standing alone, none of these facts were sufficient to establish probable cause, under a totality of the circumstances analysis, the facts provided "reasonable ground to believe" that Defendant had committed or was about to commit a felony.[6]

**B. The Police Had Probable Cause to Search the Package and the Vehicle.**

The Fourth Amendment to the United States Constitution requires that the police obtain a warrant before executing a search.[7] However, there are exceptions to this requirement, the most relevant of which to this case is the "vehicle search" exception.[8]

Under the "vehicle search" exception, the police may search a vehicle when they have probable cause to believe that it contains evidence of a crime.[9] Probable

---

[6] *See Hovington*, 616 A.2d at 834.

[7] *California v. Carney*, 471 U.S. 386, 390-91 (1985); *Ortiz v. State*, 862 A.2d 386, at *2 (Del. 2004) (TABLE).

[8] *Ortiz*, 862 A.2d at *2.

[9] *Id.* at *3 (citing *Carroll v. United States*, 267 U.S. 132, 153-54 (1925)); *State v. Smith*, 2018 WL 3000432, at *2 (Del. Super. June 11, 2018) (citing *Tatman v. State*, 494 A.2d 1249, 1251 (Del. 1985)).

cause to search a vehicle must be based on objective facts within the knowledge of an officer that would constitute probable cause for the issuance of a warrant.[10] Probable cause exists when the facts and circumstances provide a basis for a reasonably prudent person to conclude that contraband or evidence of a crime will be found.[11] If the police have probable cause to search the vehicle, they may search any part of the vehicle, or containers therein, that may contain contraband or evidence of a crime.[12] A warrantless search of a vehicle need not occur immediately after its seizure, and justification of the search does not depend upon whether the vehicle has been immobilized.[13]

Here, the police had probable cause to believe that Defendant was using the Vehicle as a means to engage in criminal activity. First, the police received information that Defendant was sending mail laced with narcotics to a prison facility from the Residence, and the police were informed that the Package, which contained narcotics and was addressed to the Residence, had been intercepted. Second, after postal authorities informed an inquirer that the Package could be picked up at the Post Office on February 22, the police observed Defendant responding to the Post Office in the Vehicle on that date with another individual and engaging in apparent counter-

---

[10] *See Carroll*, 267 U.S. at 153-54, 161-62.

[11] *State v. Watson*, 2015 WL 2210343, at *3 (Del. Super. May 8, 2015) (quoting *Harris v. State*, 806 A. 2d 119, 130 (Del. 2002)).

[12] *Arizona v. Gant*, 556 U.S. 332, 347 (2009) (citing *United States v. Ross*, 456 US 798, 820-21 (1982)); *Tatman*, 494 A.2d at 1252.

[13] *Tatman*, 494 A.2d at 1253 (quoting *United States v. Johns*, 469 U.S. 478, 484 (1985)).

surveillance. Next, police observed Defendant leave the Post Office in the Vehicle, pick up a third individual, return to the Post Office, and enter the Post Office in a suspicious manner with the two other men. Finally, the police saw Defendant returning to the Vehicle with the two other men, one of whom was carrying the Package. The Court finds that these facts, and primarily the course of conduct in which Defendant engaged on February 22, gave law enforcement probable cause to believe that the Vehicle would contain evidence of criminal activity, and that such evidence would not be confined to the Package itself. Therefore, law enforcement had probable cause to conduct a warrantless search of the Vehicle.

In his motion, Defendant argues that it was improper for the police to search the Vehicle without a warrant but does not specifically address the issue of whether the police had probable cause to search the Vehicle with or without a warrant. As the Delaware Supreme Court made clear in *Ortiz* and *Tatman*, however, once the police establish probable cause to search a vehicle, there is no need for them to obtain a warrant.[14] Moreover, the fact that the police impounded the Vehicle and searched it at a later time does not change the equation: in *Tatman*, the Court made it clear that a warrantless vehicle search need not be conducted contemporaneously with its seizure, and that justification for such a search "does not vanish once the car has been immobilized."[15] Finally, once law enforcement developed probable cause to conduct

---

[14] *Id.* at 1251 ("So long as the police have probable cause to believe that an automobile is carrying contraband or evidence [of criminal activity], they may lawfully search the vehicle without a warrant.") (citing *Carroll*, 267 U.S. at 153-54).

[15] *Id.* at 1253 (quoting *Johns*, 469 U.S. at 484 (quoting *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) (*per curiam*))).

a warrantless search of the Vehicle, there was no need for them to obtain separate warrants to search the Package or any other containers found in the Vehicle. As the United States Supreme Court held in *United States v. Ross*,[16] where police develop probable cause to search a vehicle, they may conduct a warrantless search of every part of the Vehicle and its contents, including any containers therein.[17]

In summary, the police had probable cause to search the Vehicle. In addition, the police had probable cause to search the Package because it was in the Vehicle. Therefore, the evidence will not be suppressed.

**WHEREFORE**, for the foregoing reasons, Defendant's motion to suppress is **DENIED**.

**IT IS SO ORDERED.**

_____
Judge

NEP/dsc
oc:   Prothonotary
cc:   Nicole S. Hartman, Esquire
      John R. Garey, Esquire

---

[16] 456 U.S. 798 (1982).

[17] *Id.* at 821-22.